**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JEREMIAH MANINCOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO.  4:14-CV-00654-CAN |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his request for waiver of repayment of an overpayment of social security benefits [Dkt 1; 9].  After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **REMANDED**.

**BACKGROUND**

**I.     PROCEDURAL HISTORY OF THE CASE**

On July 31, 2002, Jeremiah Michael Manincor ("Plaintiff") filed a Title II application for disability benefits, which was granted on April 14, 2003 [TR at 53-56, 110-12].  Subsequently, on November 19, 2010, the Social Security Administration ("SSA") issued a notice informing Plaintiff that he had been overpaid disability benefits from July 1, 2007 to October 31, 2010. *Id.* at 57-59.  On December 22, 2010, Plaintiff filed for a waiver of the overpayment, which was denied on February 10, 2011.   *Id.* at 60-69.    Plaintiff then filed a request for reconsideration/request for personal conference, which was held on May 23, 2011. *Id.* at 70-77.

The request for reconsideration was later denied; after which Plaintiff filed a request for a hearing. *Id.* The Administrative Law Judge ("ALJ") conducted a hearing on June 4, 2012 ("Hearing"), and heard testimony from Plaintiff and Plaintiff's former teacher, Leslie Allen ("Ms. Allen"). *Id.* at 22-52. Plaintiff was represented by counsel at Hearing. *Id.* On October 25, 2012, the ALJ issued his decision ("Determination") finding Plaintiff not without fault and ordering repayment of the overpayment amount at the rate of $500.00 per month for seventy-one months. *Id.* On July 9, 2012, by letter, Plaintiff filed a complaint with respect to his treatment during the Hearing. *Id.* at 95-97. On December 17, 2012, Plaintiff filed a request for review of Hearing decision with the Appeals Council. *Id.* at 38-39. Plaintiff requested the Appeals Council review the ALJ's Determination; and, on August 23, 2014, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. *Id.* at 4-7.

On October 13, 2014, Plaintiff filed his Complaint with the Court [Dkt. 1]. Plaintiff filed his Brief on February 13, 2015 [Dkt. 9], and the Commissioner filed her Brief in Support of the Commissioner's Decision on April 10, 2015 [Dkt. 10]. On April 10, 2015, the Administrative Record was received from the SSA [Dkt. 11]. On January 19, 2016, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 15].

## II.     STATEMENT OF RELEVANT FACTS

### 1.     *Age, Education, and Substantial Gainful Activity*

Plaintiff was born on February 20, 1984, making him twenty-eight years of age on the date of the ALJ Hearing [TR at 294, 335]. Plaintiff completed the twelfth grade and was in the special education program at Plano Senior High, Plano Regional Day School Program for the Deaf. *Id.* at 98, 294, 353-54. Plaintiff's past work experience included work for Bee-Mart

Construction Services and Outback Pools. *Id.* at 209-220, 249-58. Plaintiff's onset of disability date was December 1985. *Id.* at 277. On October 31, 2010, Plaintiff's benefits were terminated. *Id.* at 68. At the time of the ALJ Hearing, Plaintiff was married, and his wife, Julia Manincor ("Mrs. Manincor") was also noted to be deaf. *Id.* at 349, 357.

## 2.  *Education and Financial Records*

Plaintiff's education records generally reflect that he received special education services while in high school due to his deafness [TR at 228-334]. Specifically, the record reflects an Individual Education Plan ("IEP") for Plaintiff's senior year in high school. *Id.* The various plan components reflect that Plaintiff attended several general education classes with an American Sign Language ("ASL") interpreter for support, but received special education instruction outside the general education classroom specifically for Reading and English. *Id.* at 296, 303-08, 316-319, 322-24. Plaintiff received generally high grades, although many of his grades were "special education grades" based on IEP goal progress, rather than a general education curriculum. *Id.* Relevant herein, Plaintiff's school records reflect that he received an "86" in English during his twelfth year in school; this grade is a special education grade. *Id.*

Plaintiff's paystubs from Outback Pools for the time period December 29, 2011 to June 12, 2012 reflect that he received $1,500.00 per pay period in gross pay, $1,324.62 in net pay, and was paid twice per month. *Id.* at 209-20. Plaintiff's 2011 Tax Return indicates that Plaintiff and his wife, Mrs. Manincor, collectively had $35,020.00 in adjusted gross income during the 2011 tax year, and employed a tax preparer, Raymond H. Rebeck, to complete and file the return. *Id.* at 198-208. At the time of the ALJ Hearing, Mrs. Manincor was finishing college to become a teacher. *Id.* at 60-67, 221-27, 377-80.[1] Plaintiff also submitted several bills,

---

[1] The record reflects that Mrs. Manincor also has been ordered to repay a Social Security overpayment. *Id.* at 60-67, 221-27, 377-80.

including an overdue utility bill and a student loan bill, as well as a handwritten note reflecting his household expenses. *Id.* at 221-27. In December 2010, Plaintiff submitted Form SSA-632-BK to the SSA indicating that Plaintiff's current paycheck barely covered his household expenses with help from his extended family, and that his wife's employment was at best sporadic. *Id.* at 60-69.

### 3. *Hearing Testimony*

#### a. *Plaintiff's Testimony*

At Hearing, Plaintiff testified that he applied for Social Security Disability benefits on July 31, 2002, with the assistance of his mother, who is not deaf [TR at 110-12, 350-51, 361]. Plaintiff explained that no interpreter was present during the application process or during subsequent meetings with the SSA. *Id.* at 350, 358-360. An interpreter was present at Hearing, but was instructed only to interpret certain portions of the proceedings (discussed further *infra*). *Id* at 337-402. Plaintiff verbally objected to such instruction, and advised the ALJ that ASL, not English, is his first language. *Id.* at 350-353. During Hearing, Plaintiff was presented with his 2002 Social Security Application, and specifically asked if he recalled the document, to which he responded: "No, not at all… [m]y signature is on the back page…but I haven't seen this whole document before." *Id.* at 351-52.[2]

Plaintiff further testified that he lives in an apartment with his wife and child. *Id.* at 349, 368-374, 376. As to his financial status, Plaintiff testified that he has savings and checking accounts jointly with his wife and has no retirement accounts, stocks, bonds, or similar investments. *Id.* at 370-80. Plaintiff explained that he worked for a pool company performing "cleaning and technology" services, and that his boss and many of his colleagues were deaf or

---

[2] Plaintiff indicated that his counsel showed him a copy of the Social Security Application "today, prior to the hearing." *Id* at 352.

hard of hearing. *Id.* at 363-64. Plaintiff testified that he makes approximately $36,000.00 per year. *Id.* Plaintiff testified that his salary must cover all of his household's bills, including Mrs. Manincor's college expenses. *Id.* at 374. Plaintiff testified that his wife paid the utility and phone bills either online or via check, and he and his wife generally discussed any disputed bills and/or documentation that were confusing. *Id.* at 349, 368-74, 376. Plaintiff also testified that he took and failed the Texas written drivers' education test but was subsequently able to complete a drivers' education course and passed the test with the aid of an ASL interpreter. *Id.* at 378-79.

### b. *Ms. Allen's Testimony*

Ms. Allen, Plaintiff's former high school teacher, also testified at Hearing regarding Plaintiff's reading abilities [TR at 384-99]. Ms. Allen testified that she taught Plaintiff at Plano Regional Day School Program for the Deaf in ninth through twelfth grade, and is familiar with his ability to read and write. *Id.* at 385-87. She stated that ASL, not English, is Plaintiff's first language, and that Plaintiff reads at only a second to fourth grade level. *Id.* Ms. Allen further testified that, in her opinion, Plaintiff does not have the ability to read the application for social security benefits. *Id.* Specifically, Ms. Allen was presented with page two of Plaintiff's application for social security benefits containing certain social security disability and insurance notices and asked if Plaintiff could understand the content. *Id.* at 390-92.[3] Ms. Allen answered that Plaintiff would not be able to understand the language without an ASL interpreter. *Id.* She further testified regarding the Deaf Action Center, a resource for the deaf that could have provided interpretation services for SSA notices to Plaintiff. *Id.* She acknowledged that, while Plaintiff did not ask her for assistance with understanding the SSA

---

[3] The ALJ and SSA referenced several different notices Plaintiff allegedly received from the SSA during 2004-2010, including the notices included on page two of the application for social security benefits [TR at 390-95; Dkt. 10]. For simplicity, the Court will hereinafter refer to such notices as the "SSA notices."

notices, in her opinion, it would be atypical for a deaf person to seek assistance with such notices because, "a lot of the times [deaf individuals] may think they understand things, and they may not understand all the little pieces of it." *Id.* at 392-402.

Subsequent to Hearing, Ms. Allen provided a follow up letter clarifying certain portions of her testimony. *Id*. at 98. Ms. Allen advised that Plaintiff was in special education classes not only "because of his hearing impairment and speech impairments" but also because of his low reading abilities. *Id.* Ms. Allen explained therein that Plaintiff reads and functions at a third or fourth grade level, significantly below his peers. *Id.* Ms. Allen further reiterated that Plaintiff cannot read or understand content information written above a third grade level, including SSA notices. *Id.*

### c. *Hearing Procedures*

As previously noted, an ASL interpreter, Nancy Parrish ("Ms. Parrish") was present at Hearing to translate for the benefit of Plaintiff [TR at 335-402]. Ms. Parrish was directed by the ALJ to only translate questions and answers related to Plaintiff's testimony and Ms. Allen's testimony. *Id.* at 338, 348, 350. As the transcript reflects, Ms. Parris was directed not to translate any non-testimony portions (e.g. conversations between Plaintiff's counsel and the ALJ). *Id.* Plaintiff objected to this instruction; specifically he stated, "[e]xcuse me, I would like to say something if I may. I need to hear all the words that's [sic] said. And please don't stop my interpreter, please, sir, will you?" *Id.* at 350.[4] In addition, Ms. Parrish asked at one point to clarify an answer by Plaintiff to which the ALJ responded, "[n]o, no, you can't clarify anything. You have to only interpret what we say." *Id.* at 360. The Hearing lasted ninety-four minutes. *Id.* at 337, 402.

---

[4] It is unclear from the Hearing transcript (which is only a record of the verbal testimony given) if Plaintiff also objected to the lack of interpretation in ASL at more than one point during Hearing. *Id.* at 335-402. Such objections, if they occurred, were not translated by the interpreter for the record. *Id.*

On July 9, 2012, Plaintiff submitted a complaint to the Office of Disability Adjudication and Review regarding the procedures that took place at Hearing. *Id.* at 95-97. Plaintiff alleged in his complaint that he was denied equal access to a hearing on account of his disability. *Id.* at 95. The letter quoted the "Rehab [sic] Act 504 Section 794." *Id.* The complaint further stated that, "[Plaintiff] sat in the room for an hour with no access to the spoken information and did not understand what was going on." *Id.* at 96. Plaintiff also indicated that the interpreter was "barred" from relaying the spoken information. *Id.* Plaintiff asked for a new hearing before a different ALJ, and for the presiding ALJ to be provided with "in-depth training on how to utilize an interpreter in court." *Id.* The complaint ended with the statement, "[t]his complaint was written based on information given to Julia Manincor by Jeremiah Manincor from visual American Sign Language to written English." *Id.* at 96-98.

## III.    FINDINGS OF THE ALJ

As a preliminary issue, the ALJ addressed Plaintiff's request for a new hearing before a different ALJ and that the presiding ALJ be provided with training on how to utilize an ASL interpreter in Court [TR at 23-24]. The ALJ found that, "[a]ll questions and testimony of record was signed to the claimant as required by the HALLEX instructions. The claimant was represented at the proceeding by counsel, who did not object to the procedures at the hearing…[t]he only matters, which were not communicated to the claimant, were matters regarding legal interpretation or requests to counsel for additional evidence." *Id.*[5] The ALJ, therefore, found that, "the hearing was conducted according to policy instructions and was fair and impartial…[claimant's] motion for another hearing before a different Administrative Law Judge is denied." *Id.* The ALJ went on to find, after hearing testimony and conducting a review

---

[5] The ALJ noted that Plaintiff's counsel did not object to the procedures used at Hearing. *Id.* at 23-24. Plaintiff himself, however, did; the ALJ's opinion did not reference Plaintiff's express objection to Hearing procedures. *Id.* at 95-97, 350.

of the facts, that Plaintiff had been overpaid benefits in the amount of $35,405.10 during the period July 1, 2007 to October 31, 2010. *Id.* at 24-27. Under the waiver of overpayment analysis, the ALJ found that Plaintiff was not without fault in causing the overpayment. *Id.* at 27-30. Based on this determination, the ALJ concluded Plaintiff was responsible for repaying the overpayment amount at the rate of $500.00 dollars per month. *Id.*

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court cannot reweigh the evidence, substitute its judgment for that of the Commissioner, or retry issues de novo. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985). To that end, the Commissioner is entrusted to make determinations regarding issues, including weighing inconsistent evidence. 20 C.F.R. § 404.1527(c)(2). The Fifth Circuit has expressly held that the ALJ – as fact finder – and not the Court has the sole responsibility for weighing the evidence. *Muse v. Sullivan,* 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

The legal standard for determining waiver of an overpayment is whether an individual was without fault; and enforcing the overpayment would defeat the purposes of Title II of the Social Security Act (the "Act") or be against equity and good conscious. 20 CFR § 404.506.

ANALYSIS

On appeal, Plaintiff presents two issues for consideration: (1) whether the ALJ erred in finding Plaintiff was not without fault and therefore ineligible for a waiver of the overpayment; and (2) whether Plaintiff was wrongfully deprived of the right to fully participate in the hearing process [Dkt. 9]. Each of Plaintiff's issues is discussed in turn below.

## I.    PLAINTIFF'S ELIGIBILITY FOR WAIVER OF THE OVERPAYMENT

When an individual receives more social security benefits than they are entitled to under Title II, the Social Security Administration is entitled to, and may seek to recover, the overpayment. 20 CFR § 404.504. Adjustment or recovery of a Social Security overpayment can be waived only when two circumstances are present: (1) the claimant is without fault; and (2) adjustment or recovery would defeat the purpose of the Social Security Act, or would be against equity and good conscience. 20 CFR § 404.506(a). Plaintiff bears the burden of showing such circumstances. *Id.* Notably, the SSA's fault (or lackthereof) is irrelevant to the fault determination under 20 CFR § 404.506(a). *Id.* The Commissioner has the burden of showing the amount of any overpayment. 20 C.F.R. § 404.504. There is no dispute herein regarding the amount of the overpayment.[6] Thus, the Court first considers Plaintiff's argument that he was without fault.

---

[6] The ALJ made detailed findings with respect to Plaintiff's receipt of an overpayment of Title II Benefits [TR at 25-27; Dkts. 9 at 2; 10 at 1-5]. Additionally, the Parties agree that the amount of the overpayment at the time of the ALJ Determination, was $35,405.10, and that Commissioner has met his burden to show an overpayment occurred [TR at 25-37; Dkts. 9 at 2; 10 at 1-5]. The Court therefore finds that the amount of, and the fact of, the overpayment are not in dispute.

### *(1)   Plaintiff was "without fault"*

Plaintiff argues that the ALJ's finding that he is not without fault is not supported by and/or conflicts with the substantial evidence in the record [Dkt. 9 at 3-12]. An individual will be found to be not without fault if a "lack of good faith or failure to exercise a high degree of care" is shown. 20 CFR § 404.511. "The high degree of care expected of an individual may vary with the complexity of the circumstances giving rise to the overpayment and the capacity of the particular payee to realize that he is being overpaid." *Id.* All pertinent circumstances, including plaintiff's age, intelligence, and physical, mental, educational, and linguistic limitations may be taken into account. *Id.* "The test is whether a reasonable recipient of benefits with the same characteristics as the recipient who was overpaid would be at fault in receiving the benefits." *Vosler v. Bowen*, 685 F. Supp. 1206, 1209 (D. Wyo. 1988). An individual is not "without fault" when the overpayment resulted from: (a) an incorrect statement made by plaintiff which he knew or should have known to be incorrect; (b) plaintiff's failure to furnish information that plaintiff knew or should have known to be material; or (c) acceptance of a payment that plaintiff knew or should have known was incorrect. 20 C.F.R. § 404.507. The test does not consider the capabilities, knowledge, or abilities of other individuals, only plaintiff. *Coulston v. Apfel*, 224 F.3d 897, 899 (8th Cir. 2000) (rejecting the ALJ's imputation of plaintiff's "advisors'" knowledge and abilities to consideration of plaintiff's fault, where evidence indicated plaintiff had intellectual impairments, difficulty with reading and writing, and had attended special education classes).

Moreover, a finding of no substantial evidence is appropriate only when no credible evidentiary choices or medical findings exist to support the decision. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "Substantial evidence is more than a scintilla, less than a

preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames*, 707 F.2d at 164 (citing *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir. 1973) and *Payne v. Weinberger,* 480 F.2d 1006 (5th Cir. 1973) (finding substantial evidence did not support the conclusion that plaintiff was not disabled where all evidence on the records reflected that plaintiff was disabled and no evidence on the record contradicted it)); *see also Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (finding that reports of four doctors that plaintiff was not disabled versus one report stating he was disabled was substantial evidence); *Williams v. Comm'r of Soc. Sec. Admin.*, No. 4:11-CV-00373 2013 WL 1282460, at *3 (E.D. Tex. Mar. 27, 2013).

The Court agrees that the ALJ's determination regarding Plaintiff's fault is not supported by substantial evidence. Here, the ALJ did not fully develop the record and made certain factual assumptions as to Plaintiff's reading capabilities and daily activities [TR at 28-29, 349-502]. As a result, there is insufficient substantial evidence to support the conclusion that Plaintiff was not "without fault."

To begin with, the ALJ improperly imputed the knowledge and capabilities of Plaintiff's wife and other individuals to Plaintiff [TR at 28]. *Coulston*, 224 F.3d at 899 (finding that the ALJ may not input knowledge or activities of third-parties to the plaintiff). Specifically, the ALJ attributed capabilities, such as the ability to pay bills, sign and comply with a lease, write out a narrative regarding and understand the Rehabilitation Act, and file tax returns to Plaintiff [TR at 28]. The record reflects, however, that Mrs. Manincor, not Plaintiff, completed each of these activities in whole (or substantial part) and/or that no testimony exists regarding Plaintiff's

ability to perform such tasks. *Id.* at 368-78; *Foreman v. Colvin*, No. CIV.A. H-12-3148, 2013 WL 3805646, at *4-6 (S.D. Tex. July 19, 2013). The facts herein are akin to those in *Foreman*, where the court found that the record was "devoid of evidence to support the ALJ's determination." *Foreman*, 2013 WL 3805646, at *4-6. Therein, the court reversed the ALJ's finding that plaintiff was not without fault because she knew or should have known she was required to report her worker's compensation award to the SSA. *Id.* The court found that there were no record documents between the SSA and plaintiff regarding her worker's compensation income reporting prior to the overpayment statements, and there was a lack of evidence regarding plaintiff's knowledge that she should report her workers compensation case outcome to the SSA. *Id.* Those facts led the court to reverse the "without fault" portion of the ALJ's determination and remand the case for further consideration. *Id.*; *see also Lang v. Astrue*, No. CIVA 08-5880 DWFJJK, 2009 WL 3711545, at *9-11 (D. Minn. Nov. 3, 2009) (finding no support for the ALJ's determination that plaintiff was not credible where record reflects the ALJ's assumption that the SSA could not have made an overpayment absent plaintiff fault and no analysis was present showing how plaintiff's background and education made her familiar with SSA's rules).

Here, similar to *Foreman*, there are no recent documents and/or there is a lack of evidence supporting the ALJ's conclusion [TR at 28, 95-97, 355-80]. *Foreman*, 2013 WL 3805646, at *4-6. There is similarly no evidence that Plaintiff himself (and not others) performed the activities cited as evidence of Plaintiff's ability to read and understand SSA notices and/or the record reflects that a contrary conclusion must be reached. *Id.* For example, Plaintiff testified that his wife — not Plaintiff — paid the apartment and utility bills, and drafted a letter for Plaintiff's signature regarding violations of the Rehabilitation Act based

on her conversation with Plaintiff [TR at 28, 95-97, 355-80]. Indeed, the letter expressly states "[t]his complaint was written based on information given to Julia Manincor by Jeremiah Manincor from visual American Sign Language to written English" [TR at 28, 95-97]. *See also Rapley v. Schweiker*, No. 1996-CIV-JE, 1983 WL 44302, at *1 (S.D. Fla. May 3, 1983) (finding intellectually disabled plaintiff was "without fault" where plaintiff could not manage his own financial affairs and understand the SSA notices, and the ALJ improperly attributed plaintiff's representative payee's fault and understanding to plaintiff). The ALJ also never inquired into the details of the performance of the remaining activities listed in support of the ALJ's findings, such as the filing of tax returns or signing of an apartment lease [TR at 335-402]. The ALJ did nothing to ascertain the extent of any assistance from Plaintiff's wife or another third-party. *Id*. There simply is not enough evidence on the record here to support the conclusions reached by the ALJ, namely that Plaintiff himself performed these key activities, and thus had sufficient capabilities to read, write and understand the SSA notices. *Id.*; *Foreman*, 2013 WL 3805646, at *4-6.

Furthermore, the ALJ found that "claimant was competitively employed making $2,200.00 per month and living independently. He continues to work full-time making in excess of $28,000.00 per year" which indicated that Plaintiff had the ability to read and understand the SSA notices provided to him [TR at 49]. However, nowhere in his Determination does the ALJ specify Plaintiff's type of employment or any reading or writing skills required by such employment. *See generally id.* at 43-52. The technical skills, including ability to read and write, are different for a cleaner versus a receptionist or a lawyer, as is reflected by the skill level definitions in the Dictionary of Occupational Titles ("DOT"). 891.684-018 SWIMMING-POOL SERVICER, DICOT 891.684-01820 (Language Level 2, write compound and complex

sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs); 110.107-010 LAWYER, DICOT 110.107-010 (Language Level 6, write novels, plays, editorials, journals, speeches, manuals, critiques, poetry, and songs); 237.367-038 RECEPTIONIST, DICOT 237.367-038 (Language Level 3, write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech.); s*ee also* Social Security Ruling 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (adopting DOT definitions and criteria for occupational analysis). Here, the ALJ did not make findings, nor make a detailed inquiry into, the skills required of Plaintiff's current employment as a pool cleaner, or past employment as a construction worker [TR at 48-51, 355, 377-400].[7] The ALJ's attribution of a particular level of reading and writing skill to such employment was in error.

Furthermore, the ALJ had the ability to test Plaintiff's reading level through, among other options, an impromptu examination at Hearing or requesting additional testing regarding Plaintiff's reading level [TR at 22-52]. *Bucci v. Apfel*, No. 98 CIV. 2372 (RWS), 1999 WL 553787, at *4-6 (S.D.N.Y. July 29, 1999) (finding that record regarding plaintiff's reading capabilities as a deaf person had been fully developed where the ALJ expressly questioned plaintiff about specific phrases in the SSA notices). No such steps were taken here [TR at 22-52].[8] Thus, the evidence in the record with respect to Plaintiff's reading level is insufficient to support the ALJ's conclusions with respect to Plaintiff's fault or lackthereof.

---

[7] The Court finds it instructive that the majority of Plaintiff's coworkers are also deaf or hard of hearing, and therefore his workplace is also different than the typical or competitive employment position of the same type [TR at 364].

[8] The Court also notes that the ALJ did not inquire into Plaintiff's understanding of his Wife's overpayment case, which would also be highly relevant to Plaintiff's understanding of his reporting requirements during the applicable overpayment period [TR at 335-402]. *Klostermann v. Bowen*, No. 88-6236-DA, 1989 WL 281941, at *4 (D. Or. Mar. 17, 1989) (finding Plaintiff's knowledge of daughter's overpayment case was relevant to without fault analysis). However, the ALJ also cannot conflate Mrs. Manincor's "fault" and failure to secure of waiver of overpayment with Plaintiff's fault or lackthereof [TR at 30 (noting "[o]bviously, no argument has been successful in obtaining waiver of [Mrs. Manincor's] overpayment" as an additional reason for the ALJ's decision)]. *Coulston*, 224 F.3d 897, 899 (8th Cir. 2000) (finding plaintiff's knowledge and fault, not his advisors', to be the relevant waiver inquiry).

*See Jefferson v. Bowen*, 794 F.2d 631 (1986) (reversing and remanding where plaintiff's ability to read SSA forms was limited, notices regarding reporting requirements were sparse, plaintiff had only "some ability to read," and plaintiff received oral assurances from SSA that she should be receiving benefits prior to overpayment notices).

The Fifth Circuit has held that "when a claimant fails to read a benefits form and verify that the information therein is correct, the claimant who signs the form may be held to be "at fault" if the information turns out to be incorrect." *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). However, the issue here, is not whether Plaintiff failed to read his application, but whether Plaintiff was, in fact, able to read and understand it. Indeed, unlike *Austin* and other Fifth Circuit precedents, Plaintiff asserts both that (1) he was not provided with a full copy of the application to review; and (2) that he was unable to understand SSA notices after the date of application and provide notice of employment [TR at 43-52; Dkt. 9]. *Austin*, 994 F.2d at 1174.

Additionally, even assuming that there is sufficient evidence on the record to make a determination with respect to Plaintiff's reading level and daily activities, the ALJ's conclusion that Plaintiff was "only in special education because of his deafness," and the need for ASL interpreter support, is further contrary to the record [TR at 28]. During Plaintiff's initial disability application, extensive evidence was presented regarding Plaintiff's special education placement including the following: (1) a "Services to be Provided" document reflecting: (a) English and Reading courses would be provided to Plaintiff "in a location other than General Education Classroom," (b) Plaintiff would receive a modified or significantly modified general education curriculum in those courses, and (c) Plaintiff would receive a special education grade in each course; (2) Plaintiff's exemption from state standardized testing; and (3) a "School Activity Report" dated August 30, 2002 from Plaintiff's teacher Carrie Lantos reflecting English

instruction during Plaintiff's twelfth year in high school at a third to fourth grade level. *Id.* at 307, 310, 322. Ms. Allen's letter dated March 18, 2013, also expressly stated Plaintiff was at a third to fourth grade reading level and that Plaintiff was in "[r]esource English class, meaning he functioned more than 2 years below his non-disabled peers." *Id.* at 98. Ms. Allen also expressly stated, "I feel strongly that [Plaintiff] is not able to read and fully understand content information about anything if it is written beyond a [third] grade level." *Id.* at 98. She further indicated that Plaintiff's grade of 86 in English reflected that he was working on his IEP goals. *Id.* The ALJ's Determination states that Ms. Allen testified at Hearing that while Plaintiff was not learning disabled, he could not read at the level necessary to read the SSA notices presented to Ms. Allen . *Id.* at 28. The ALJ, in making this statement, failed to identify reasons for disregarding record evidence that Plaintiff was in special education courses both because of his deafness and deficits in English and Reading. *Id.* at 28, 307, 310, 322, 388.[9] Furthermore, the ALJ did not present reasons for finding Ms. Allen's testimony less credible and disregarding her opinion in his Determination. *Id.*

Finally, the ALJ made an unsupported assumption that Plaintiff's high duty of care requires that Plaintiff seek out an interpreter for SSA notices if he does not understand them or cannot read them [TR at 28-29]. *Lang*, 2009 WL 3711545, at *9-11 (remanding where the ALJ made and relied on a faulty assumption that SSA could not have made a mistaken overpayment absent fault by plaintiff under the circumstances presented); *Doyle v. Barnhart*, 361 F.Supp.2d 1357, 1360-62 (M.D. FL 2003) (rejecting assertion that plaintiff has a duty to research, after reporting income to SSA, the likelihood of benefits termination and not accept

---

[9] The Court acknowledges the Commissioner's arguments that Plaintiff should have requested an interpreter [*see* Dkt. 10]. Indeed, nowhere on the record does Plaintiff or Plaintiff's Counsel expressly state that Plaintiff requested an interpreter during SSA proceedings, except perhaps after Plaintiff had hired counsel [TR at 361-62]. However, the Court acknowledges that it likely would have been evident, based on the type of disability (deafness), that alternative means of communication may be needed.

social security checks if termination is likely based on research). The Fifth Circuit has not directly addressed a deaf or non-English speaking person's duty of care in this regard; but the Court cannot input knowledge and understanding regarding social security requirements to an individual where no evidence has been presented that the individual was informed of his responsibilities. *Doyle*, 361 F.Supp.2d at 1360-62 (stating that the ALJ improperly imputed detailed understanding of the social security benefits system to plaintiff where such testimony had not been developed). Therefore, because the evidence in the record is not sufficiently developed and/or there is insufficient substantial evidence to support the ALJ's findings, the ALJ's Determination is remanded for additional development of the record and a new determination regarding whether Plaintiff was without fault.

### (2)     *Requiring Repayment Would Defeat the Purposes of Title II or be Against Equity and Good Conscience?*

Because the ALJ did not find Plaintiff to be without fault, he did not reach the second element of the waiver analysis, nor make findings regarding the same [TR at 24-25, 27-31]. As previously noted, the Court cannot substitute its judgment for the Commissioner's with respect to this issue. *See infra* p. 8-9. We therefore remand this element to the ALJ for further determination consistent with this opinion. *Foreman*, 2013 WL 3805646, at *4-6 (remanding element two where the ALJ initially found plaintiff was not without fault and did not reach element two, and without fault determination was reversed by court).

## II.     WHETHER PLAINTIFF WAS DEPRIVED OF A FULL AND FAIR HEARING

In addition to Plaintiff's argument that he was "without fault," Plaintiff raises two procedural arguments on appeal: (1) whether he was deprived of a full and fair hearing; and (2) whether the ALJ was biased, which resulted in prejudice to Plaintiff [Dkt.9]. We examine each argument in turn.

*(1)* ***Full and Fair Hearing***

It is well settled that a basic obligation of the ALJ during a social security hearing is to "develop a full and fair record." *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (citing *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981)). The Fifth Circuit has explained that social security hearings are non-adversarial and, consequently, "[t]he hearing examiner has the duty, accentuated in the absence of counsel, to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Ware,* 651 F.2d at 414 (citation omitted). Failure to fully and fairly develop the record results in a lack of substantial evidence upon which the ALJ may render a determination. *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986). Although the ALJ's duty to develop the record is heightened by the absence of counsel for a claimant at hearing, the duty is still significant even in the presence of counsel. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (noting the requirement to fully and fairly develop the record even where plaintiff was represented by counsel at the ALJ hearing); *Smith v. Secretary of Health, Education and Welfare*, 587 F.2d 857, 860 (7th Cir. 1978) (citing *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)). A court may reverse the ALJ's decision if plaintiff shows, "(1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced plaintiff." *Jones v. Astrue,* 691 F.3d 730, 733 (5th Cir. 2012). Procedural deficiencies, including problems and difficulty in hearing witnesses, may also be grounds for remand for a further hearing. *Suarez v. Colvin*, No. 3:13-CV-1459-P, 2014 WL 3728606, at *5 (N.D. Tex. July 28, 2014) (remanding for a further hearing where witness testimony via telephone was of poor quality and resulted in inaudible responses).

The ALJ limited ASL interpretation services to only Plaintiff's testimony and Ms. Allen's testimony [TR at 337-402]. Consequently, Plaintiff argues he was not able to hear

and understand substantial portions of the Hearing [Dkt. 9 at 12-15]. Furthermore, the ALJ expressly refused to allow the interpreter to interpret Plaintiff's objections to Hearing procedures on the record [TR at 337, 339, 348-350, 360]. The ALJ further refused to allow the interpreter to clarify a phrase of Plaintiff's for the record. *See id.* at 360. It is clear from the Hearing transcript that the interpreter was prohibited by the ALJ from interpreting a substantial portion of the dialogue at Hearing. *Id.* at 337-402. Although Plaintiff's counsel was present at Hearing, this fact alone does not negate the fact that Plaintiff was unable to understand, and thus unable to comment and communicate with his counsel on many factual statements and/or questions by the ALJ during Hearing. *Id.* at 337. Additionally, the Court acknowledges that the ALJ made unfavorable findings regarding Plaintiff's credibility and believed Plaintiff to have a hostile demeanor [Dkt. 9 at 15; TR at 10-11, 23-24]. Plaintiff's counsel argues that his demeanor may have, at least in part, been due to Plaintiff's frustration with Hearing procedures, and the ALJ's misunderstanding or lack of familiarity with deaf communication which may include exaggerated hand gestures and facial expressions [Dkt. 9 at 15; TR at 10-11, 23-24]. The Court finds, on the record before it, that Plaintiff was not provided with a full and fair opportunity to be present at his Hearing, and this matter should further be remanded to allow Plaintiff such opportunity.[10]

### (2)    *Bias*

Plaintiff also argues the ALJ was biased against him [Dkt. 9 at 12-15]. The showing required to prove ALJ bias is a high burden. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). Indeed, ALJ's are presumed to be unbiased. *Rollins*, 261 F.3d at 857; *Valentine*,

---

[10] The Court concurs with the Parties that HALLEX I-2-1-74 and I-2-6-12 do not address what portions of a hearing should be interpreted for a deaf party [Dkts. 9 at 12-15; 10 at 10-12]. Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-2-1-74, I-2-6-12.

574 F.3d at 690. The unbiased presumption can be rebutted only by showing "conflict of interest or some other specific reason for disqualification." *Id.* The United States Supreme Court has stated regarding judicial bias that:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. … Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 550-55 (1994) (finding expressions of impatience, annoyance, or ordinary efforts at courtroom administration to not constitute bias); *see also Mims v. Astrue*, 701 F. Supp. 2d 892, 911 (S.D. Tex. 2010) (finding misinterpretation of a statement of the plaintiff, without further showing of antagonism or intentionality, was not bias).

The ALJ, at Hearing and within his findings, made statements including, "it borders on the absurd to insinuate that [Plaintiff] cannot understand basic reporting requirements but can understand the meaning of technical language in the Rehab [sic] act" and "[i]f the Claimant cannot be frugal enough to repay the overpayment at $500.00 per month, he should never have spent the overpayment to which he was not entitled. …this repayment period is generous given that he should have never accepted the first payment…" [TR at 27-31, 335-402]. Plaintiff argues that statements such as these may suggest that the ALJ had pre-conceived opinions regarding Plaintiff's fault and ability to pay. *Id.* However, as the court in *Sarchet* noted, bias must rise to the threshold of antagonism, making fair judgment impossible. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) (finding the ALJ's tone, which suggested a commitment to denial of the plaintiff's claim, to be grounds for a recommendation to assign the case to a new ALJ, but not

sufficient to show bias); *see also Berger v. United States*, 255 U.S. 22 (1921) (finding bias in the extreme situation where judge made significant anti-German statements and sentenced defendants to twenty years imprisonment in an espionage case against German American defendants). The ALJ's conduct and statements herein do not rise to the extreme level necessary to show bias.

## CONCLUSION

The Court concludes that the ALJ and Appeals Council erred in finding Plaintiff was not "without fault" on the record before it, and find that remand for further fact-finding with respect to Plaintiff's fault is warranted. *See infra* p. 9-17. The Court suggests the SSA transfer or assign this matter upon remand to a different ALJ. The Court is cognizant it cannot order such transfer absent a clear showing of bias (which is not present here); however, believes such course of action would be best for all involved. The Court orders that Plaintiff be provided with a full and complete ASL interpretation of any ALJ hearing, including any conferences/communications between counsel and the ALJ, so that he may fully understand and participate in any such hearing.

Pursuant to the foregoing, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

**Mar 30, 2016**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE